UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAELIM TRADING CO., LTD.

|  |  |
|---|---|
| Plaintiff, | 10-CV-2944 (VB) |

-against-

GIAGNI ENTERPRISES, LLC, SVG
ENTERPRISES LLC, AQUASSENCE,
LLC.  XYZ CORPORATION 1-20,
Successor corporations to GIAGNI
ENTERPRISES LLC, VINCENT
GIAGNI, JR., STEPHEN GIAGNI,
VINCENT GIAGNI, SR., &
LEONORA GIAGNI, JOINTLY AND
SEVERALLY,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HERRICK, FEINSTEIN LLP
Robert L. Rattet
Ross L. Hirsch
James B. Glucksman
2 Park Avenue
New York, New York 10016
(212) 592-1400

VENERUSO, CURTO, SCHWARTZ, & CURTO, LLP
Joseph R. Curto, Esq.
35 East Grassy Sprain Road
Yonkers, New York 101710
(914) 779-1100

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.  Plaintiff's Motion Has No Application to the Individual Defendants.............................. 3

II.  The Undelivered Goods: Plaintiff Is Not Entitled To Judgment ....................... 4

    A.  Plaintiff's Rule 56.1 Statement is Unsupported and Defective .............................. 4

    B.  The Record Demonstrates That Plaintiff Is Not Entitled To Be Paid for the Withheld Goods ............................................................................... 5

        1.  Plaintiff Did Not Have Reasonable Grounds for Insecurity........................ 6

        2.  The Invalidity of the "Demands" for Assurances......................................... 8

        3.  The Unproven "Reasonableness" of the of Plaintiff's Efforts to Resell........................................................................................................ 9

CONCLUSION .............................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Allen v. Schiff,*
   908 F. Supp. 2d 451 (S.D.N.Y. 2013)....................................................................4

*Beeche Sys. Corp. v. D.A. Elia Constr. Corp.,*
   164 B.R. 12 (N.D.N.Y. 1994) .............................................................................8

*Enron Power Marketing, Inc. v. Nevada Power Co.,*
   No. 01-16034 (AJG), 2004 WL 2290486 (S.D.N.Y. Oct. 12, 2004) .......................6

*Forbes v. Lighthouse Int'l,*
   11 Civ. 7065, 2013 WL 1811960 (S.D.N.Y. May 1, 2013) ....................................4

*Hornell Brewing Co., Inc. v. Spry,*
   174 Misc. 2d 451, 664 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 1997).......................6, 7

*Johnson v. City of Mount Vernon,*
   10 Civ. 7006, 2012 WL 4466618 (S.D.N.Y. Sept. 18, 2012).................................4

*North Am. Foreign Trading Corp. v. Direct Mail Specialist,*
   697 F. Supp. 163 (S.D.N.Y. 1988)......................................................................10

*Phibro Energy v. Empresa De Polimeros De Sines Sarl,*
   720 F. Supp. 312 (S.D.N.Y. 1989)........................................................................6

*Twin Craft Mfg. Corp. v. Parfi Perfumes, Inc.,*
   No. 89 CIV. 1275 (PKL), 1990 WL 106828 (S.D.N.Y. July 20, 1990)................10

### <u>Statutes</u>

U.C.C. § 2-609 ...........................................................................................6, 8

U.C.C. § 2-709 ...........................................................................................9, 10

Fed. R. Civ. P. 56(c).........................................................................................4

Local Rule 56.1 ....................................................................................1, 3, 4, 5

### <u>Miscellaneous</u>

4A Anderson, U.C.C. §2-709:15 (3d ed.) (1983) ...........................................10

Defendants respectfully submit this memorandum of law in opposition to the motion for partial summary judgment of Plaintiff Daelim Trading Co., Ltd. ("Plaintiff" or "Daelim").

## PRELIMINARY STATEMENT

Starting in approximately 2003, Plaintiff, a manufacturer, sold and delivered goods (primarily faucets) to affiliated wholesale distributors, Defendant Giagni Enterprises, LLC ("Enterprises") and SVG Enterprises ("SVG", collectively with "Enterprises," the "Corporate Defendants").  In turn, Enterprises sold the goods to Home Depot and SVG sold them to Lowe's.

Plaintiff alleges, through Count I of its Third Amended Complaint, that, for certain shipments of goods, the Corporate Defendants did not tender payment according to the terms of the invoices.  Through its motion, Plaintiff seeks summary judgment on Count I: (a) in the sum for $2,432,827.21 for unpaid invoices on goods delivered; and (b) for an additional $586,930.25 as the "contract price" for goods that Plaintiff argues it was justified in withholding from the Corporate Defendants.

For purposes of judicial economy, and as a matter of good faith, the Corporate Defendants do not contest Plaintiff's motion with respect to the $2,432,827.21.  In taking this position, the Corporate Defendants make clear as follows:

*First*, the Corporate Defendants oppose summary judgment, and contest any liability, with respect to the $586,930.25 in undelivered goods.  Plaintiff's motion is facially defective in that its Rule 56.1 statement is *unsupported by any citations to the record*.  Moreover, even if one searches Plaintiff's papers for the "proof" offered as to its entitlement to the contract price for the undelivered goods, it is clear such "proof" is far less than is required to establish as a matter of undisputed fact that: (a) Plaintiff had a reasonable grounds to demand assurances of performance from the Corporate Defendants; (b) that Plaintiff sufficiently demanded assurances of

performance from the Corporate Defendants; and (c) that Plaintiff made a reasonable effort to resell.

In contrast, the evidence establishes that, in the months leading up to Plaintiff's refusal to ship the goods in question, the Corporate Defendants, at Plaintiff's request, had started paying for goods *before delivery*.  That is, though the Corporate Defendants had an outstanding balance due to old shipments, Plaintiff could not realistically or logically be concerned that the Corporate Defendants would not pay for the future shipments — because Plaintiff would be *prepaid*. Plaintiff chose to hold the future deliveries hostage to induce payment on past invoices, as Plaintiff knew, in its own words, that the shipments were "very urgent" for the Corporate Defendants who "won't obtain any business" without them.  (Declaration of Robert Rattet, Ex. 1).  This tactic does not entitle them to recover the contract price for those goods, especially given that Corporate Defendants had agreed to pay before shipment.

*Second,* the Corporate Defendants do not waive their counterclaims arising out of defects in the goods delivered by Plaintiff, for which neither party has sought summary judgment.

*Third,* the Corporate Defendants, along with all other Defendants, strongly contest Plaintiff's allegation that any individuals should bear personal liability for the obligations of the Corporate Defendants.  Specifically, through Count I of the Complaint, Plaintiff also alleges that the veil of the Corporate Defendants should be pierced to hold brothers Vincent Giagni Jr. and Stephen Giagni (the two members of the Corporate Defendants), as well as their parents, Leonora Giagni and Vincent Giagni Sr. (collectively, the "Individual Defendants"), liable for the debt owed by the Corporate Defendants to Plaintiff.  Though Plaintiff moves for summary

judgment on Count I, it offers no proof and makes no argument that any of the Individual Defendants are responsible for the contracts of the Corporate Defendants.[1]

In sum, the Corporate Defendants do not contest Plaintiff's motion with respect to the 2,432,827.21 in delivered-and-invoiced goods, but Plaintiff's motion for partial summary judgment should be denied in all other respects and with respect to all other defendants.

## ARGUMENT

### I.    Plaintiff's Motion Has No Application to the Individual Defendants

Count I of the Third Amended Complaint encompasses the breach of the contract claim against the Corporate Defendants and the veil-piercing claims against each of the Individual Defendants. Plaintiff has moved for summary judgment on Count I of the Third Amended Complaint.  However, Plaintiff does not argue in its motion that Individual Defendants should be held responsible for the Corporate Defendants' contractual obligations.  Further, in Plaintiff's Local Rule 56.1 Statement ("P-SOF"), it clarifies that it only seeks judgment against "Giagni Enterprises, LLC and SVG Enterprises."  (P-SOF at page 1).  Thus, Plaintiff's motion is directed exclusively at the Corporate Defendants.

Nevertheless, out of an abundance of caution, Defendants state clearly that Plaintiff has presented absolutely no evidence — whether referenced in the Rule 56.1 Statement or otherwise — that the veil of the Corporate Defendants should be pierced vis-à-vis any of the Individual Defendants.  Plaintiff cannot be granted summary judgment on the Count I vis-à-vis the Individual Defendants.[2]

---

[1] Through their parallel motion for summary judgment, Leonora and Vincent Giagni Sr., individuals without any ownership interest in the Corporate Defendants, seeks dismissal of all claims against them.

[2] Plaintiff's motion also makes no reference to defendant Aquassence, LLC.

## II.    The Undelivered Goods: Plaintiff Is Not Entitled To Judgment

   A.    Plaintiff's Rule 56.1 Statement is Unsupported and Defective

   Plaintiff's motion papers include a "Local Rule 56.1 Statement."  However, none of the factual statements made therein are supported by citations to admissible evidence.  Indeed, Plaintiff's entire Rule 56.1 Statement is void of any reference to the record.  This evidentiary failure is in clear contravention to Local Rule 56.1 of the Southern and Eastern Districts of New York and Fed. R. Civ. P. 56(c):

   > Local Rule 56.1
   >
   > Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, *must be followed by citation to evidence* which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).
   >
   > Fed. R. Civ. P. 56(c).
   >
   > A party asserting that a fact cannot be or is genuinely disputed *must support the assertion* by: (A) *citation to particular parts of materials in the record* . . .

   For this reason alone, Plaintiff's motion is defective and should be denied.  *See, e.g., Forbes v. Lighthouse Int'l*, 11 Civ. 7065, 2013 WL 1811960,*9 n.1 (S.D.N.Y. May 1, 2013) (Briccetti, J.) ("The Court disregards plaintiff's Local Rule 56.1 counter statement of material facts and additional statement of material facts to the extent they fail to cite admissible evidence or couch argument and analysis as fact"); *Johnson v. City of Mount Vernon*, 10 Civ. 7006, 2012 WL 4466618, *6 n.1 (S.D.N.Y. Sept. 18, 2012) (Briccetti, J.) ("However, plaintiff provides no citations to the record as required by Fed.R.Civ.P. 56(c). . . . Plaintiff's attempt to cite admissible evidence in the body of his opposition memorandum is insufficient and confusing"); *Allen v. Schiff*, 908 F. Supp. 2d 451, 468 n.1 (S.D.N.Y. 2013) (Briccetti, J.) ("Defendants, in their statement of material facts, provide no citations to the record as required by Fed.R.Civ.P.

56(c). . . . Thus, the Court accepts as true the assertions in plaintiff's Rule 56.1 statement that are supported by admissible evidence and otherwise uncontroverted by admissible evidence.").

The deficiencies of Plaintiff's Rule 56.1 Statement are profound and determinative here, especially given: (a) Plaintiff's burden, as movant, to establish the facts that are not in dispute; (b) the existence of particular facts alleged by Plaintiff here that are within the exclusive of purview of Plaintiff, but are unsupported by the record.  For example, Plaintiff cannot make the blanket statement that "Plaintiff was able to resell $8,300 of the withheld products since the commencement of the present suit" without identifying support, in admissible form, demonstrating its attempts to re-sell the goods.

B.    The Record Demonstrates That Plaintiff Is Not Entitled To Be Paid for the Withheld Goods

Even if the Court looked beyond Plaintiff's deficient Rule 56.1 Statement and searches the record for evidence supporting Plaintiff's naked statements of fact, Plaintiff's motion should be denied as to the undelivered goods.  Not only has Plaintiff failed to prove an entitlement to payment for these goods, but the facts— as stated in the Corporate Defendants' response to the statement of facts, and as evidenced by the supporting record cites — conclusively shows that Plaintiff is not entitled to payment.

More specifically, Plaintiff argues that it is "entitled to recover the contract price of undelivered goods in the amount of $595,230.25 because Corporate Defendants transmitted purchase orders for specific goods and effectively repudiated those orders by failing to provide adequate assurances, when duly demanded by Plaintiff, that these goods will be paid for in full." (Pl. Br. at 11).  As set forth below, the evidence instead shows that: (a) Plaintiff never had grounds to duly demand adequate assurances; (b) never duly demanded adequate assurances; and (c) the Corporate Defendants never "repudiated" the purchase orders for the undelivered goods.

### 1.      Plaintiff Did Not Have Reasonable Grounds for Insecurity

Relying on U.C.C. § 2-609, Plaintiff argues that the Corporate Defendants repudiated the contracts for undelivered goods — contracts not even included in the evidentiary record provided by Plaintiff — when it failed to give adequate assurance of due performance.

U.C.C. § 2-609 provides in relevant part:

> 1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return. . . .
>
> (4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

As a threshold matter, as recognized by the case law referenced by Plaintiff, the question of whether reasonable grounds for insecurity existed is rarely decided by summary judgment because it necessarily implicates buyer's exact words or actions, the course of dealing or performance between the parties, and the nature of the sales contract and the industry.  *See Hornell Brewing Co., Inc. v. Spry*, 174 Misc. 2d 451, 455, 664 N.Y.S.2d 698, 702 (Sup. Ct. N.Y. Cnty. 1997).  The standard is "high" for a finding of insecurity as a matter of law, and is rarely met at the summary judgment stage.  *See Phibro Energy v. Empresa De Polimeros De Sines Sarl*, 720 F. Supp. 312, 322 (S.D.N.Y. 1989); *Enron Power Marketing, Inc. v. Nevada Power Co.*, No. 01-16034 (AJG), 2004 WL 2290486, *3, *6 (S.D.N.Y. Oct. 12, 2004).

Here, in a failed effort to meet this high standard, Plaintiff argues that its reasonable grounds for security were that "the Corporate Defendants were in arrears in the amount of $2,432,827.21, on thirty (30) separate invoices."  (Pl. Br. at 13).  Plaintiff's simplified argument

omits critical facts, namely that: (a) the unpaid invoices were from July 2009 and earlier; and (b) from July 2009 moving forward, at Plaintiff's insistence, the Corporate Defendants, indeed, paid for goods before delivery.  (Declaration of Vincent Giagni Jr., ¶¶ 6-12, Exs. 2-4; P-SOF, ¶ 18; Exhibits to Plaintiff's Motion ("Pl. Ex."), D, H). .  The Corporate Defendants were willing to, and would have, continued to pay before delivery for those goods.  Vincent Giagni Jr., on behalf of the Corporate Defendants made that clear to Plaintiff at the time:

> I will take the existing inventory on the attached schedule as show.
> _We will pay_ for that inventory cod _before it leaves the port_.  We
> will continue to purchase existing products from Daelim.

(Pl. Ex. I) (emphasis added).

In other words, the Corporate Defendants' agreement to pay for the goods in advance — which then it did — provided Plaintiff with the security it needed, and specifically asked for, as to future shipments.  Plaintiff's billing record conclusively show that the Corporate Defendants paid for _all_ shipments made between July-October 2009.  (Giagni Decl., Ex. 3 at 259). Likewise, in contemporaneous correspondence preceding the shipment cut-off, DBI confirmed to the Corporate Defendants that it had received payments that "cover" the next shipment for which it thanked the Corporate Defendants for "your payments in advance."  (Giagni Jr. Decl., Ex. 4).

The agreement to pre-pay for the undelivered goods in question supersedes any basis for insecurity as result of the outstanding debt because prepayment provides the needed security.[3] As such, the Corporate Defendants never "repudiated" the invoices for the undelivered goods, as Plaintiff argues.  Rather, they were willing to pay for the undelivered goods in advance, but Plaintiff chose to suspend payment as a _de facto_ penalty for the Corporate Defendants'

---

[3]  The Corporate Defendants recognize that "reasonable grounds for insecurity _can_ arise from the sole fact that a buyer has fallen behind in his account with seller."  _Hornell_, 664 N.Y.S.2d at 703.  However, here, that fact does not provide reasonable grounds because any insecurity that Plaintiff may have had as to the undelivered goods was directly addressed through the Corporate Defendants' agreement to prepay for the shipments.

outstanding debt.  When Plaintiff stopped delivering goods in late November 2009, it did not have ample reason for insecurity as to payment for the undelivered goods.

Put simply, if the Corporate Defendants would have paid for the goods *before shipment*, how can Plaintiff argue that it had good reason for insecurity?

### 2.        The Invalidity of the "Demands" for Assurances

Moreover, even if Plaintiff had grounds to demand assurance from the Corporate Defendants, they did not do so sufficiently.

The jurisprudence interpreting U.C.C. § 2-609 dictates that in order to constitute a demand as contemplated by 2-609, the demand must not only reference the U.C.C. and track the language of the statute, but also state unless adequate assurance is provided, the demanding party will suspend its performance.  S*ee Beeche Sys. Corp. v. D.A. Elia Constr. Corp*., 164 B.R. 12, 17 (N.D.N.Y. 1994) (stating letter that "makes no reference to the U.C.C., does not track the language of U.C.C. § 2-609(1)" and does not "request ... any assurance of performance" does not "appear ... to be such a demand"); se*e also* § 2-609 - Form 3 (McKinney's Forms 2003) (form demand for adequate assurance of due performance; "We regard these reports as sufficient to constitute reasonable grounds for insecurity under § 2-609 of the Uniform Commercial Code ... We, therefore, demand that you give us adequate assurance of due performance of our agreement.").

Here, Plaintiff argues that it "repeatedly demanded assurances from Corporate Defendants that past debts would be paid for."  (Pl Br. at 13).  This argument fails for two reasons. *First*, the "evidence" in support of that argument is a citation to the Declaration of Kyung Chul Jin.  However Mr. Jin's affidavit merely contains a conclusory statement that Plaintiff requested assurances from Corporate Defendants. (Jin Decl. ¶ 19).  Clearly, this does evidence the detailed and specified demand required under the UCC.  Moreover, the one

"example" demand provided by Plaintiff is conversational in tone and comes nowhere close to tracking the statutory language, in sum or in substance. (Pl. Ex. E).

*Second*, Plaintiff again conflates the payment of past overdue invoices with the payment for the undelivered goods.  In arguing that it sought assurance "that past debts would be paid for," Plaintiff implicitly concedes that it did not demand assurances that the ongoing shipments would be paid.  Plaintiff did not demand such assurance because the Corporate Defendants were paying for the ongoing shipments before delivery and would have continued to do so.

Ultimately, Plaintiff never demanded assurances as to payment for the undelivered goods, let alone do so in compliance with the strict requirements of the U.C.C.  Plaintiff elected to hold the undelivered goods to put the squeeze on the Corporate Defendants' business and thus force payment of the older invoices.  Indeed, in contemporaneous internal correspondence, DBI admits that it held back the cargo because it knows the harm that it will inflict upon the Corporate Defendants:

> I knew that this this cargo is very urgent for Giagni . . . If we do not send this cargo timely, Giagni should pay the penalty to Lowe's and they won't obtain any business from Lowe's.

(Rattet Decl., Ex. 1).

Plaintiff's strong-arm tactics, whether justifiable from a business perspective or not, do not entitle Plaintiff to recover the contract price for those withheld goods.

### 3.    The Unproven "Reasonableness" of the of Plaintiff's Efforts to Resell

Lastly, even if Plaintiff somehow can establish that it had grounds to demand assurances and did so in compliance with the U.C.C, Plaintiff has not established that it made "reasonable efforts to sell the withheld products."  Without this proof of reasonable effort, Plaintiff cannot justify recovering the contract price of the withheld goods pursuant to U.C.C. § 2-709.

As a threshold matter, courts have repeatedly held that the "reasonableness" language in § 2-709(1)(b) evinces an intent demonstrating that these matters should ordinarily be decided by the finder of fact, not as a matter of law. *See, e.g., Twin Craft Mfg. Corp. v. Parfi Perfumes, Inc*., No. 89 CIV. 1275 (PKL), 1990 WL 106828, at \*4 (S.D.N.Y. July 20, 1990); *North Am. Foreign Trading Corp. v. Direct Mail Specialist*, 697 F. Supp. 163, 167 (S.D.N.Y. 1988); 4A Anderson, U.C.C. §2-709:15 (3d ed.) (1983) (ordinarily issues under §2-709(1)(b) raise questions of fact that should not be disposed of via summary judgment)

Here, Plaintiff's "proof" is another conclusory statement from Mr. Jin that Plaintiff "has worked diligently to resell the products withheld from Corporate Defendants."  (Jin Decl., ¶ 32). This proof is insufficient at the summary judgment stage, especially given that the Corporate Defendants have not had the opportunity to probe Mr. Jin on his terse assertion.

Moreover, Plaintiff tries to blame its paltry $8,300 in re-sold goods on the fact that the products were "individually packed with Corporate Defendants' logo" and could not be resold "without incurring potential trademark/copyright actions."  (Pl. Br. at 15).  This argument is misleading and inaccurate for the following reasons:

> 1)    The logos were often on the outside packaging of the goods or on removable labels affixed to the hosing on the faucets (and Plaintiff has offered no specific evidence here as to the logos on the withheld products);
>
> 2)    The Corporate Defendants had offered to help facilitate the sale of the withheld goods (as a conciliatory effort); Plaintiff never sought this assistance. (Pl. Ex. I).
>
> 3)    Plaintiff certainly never asked the Corporate Defendants to clear any "trademark/copyright" issues, if any even existed.

(Giagni Jr. Decl., ¶¶ 14-18).

Whether or not Plaintiff made "reasonable" efforts cannot be resolved on the current record, and, at a minimum, presents an issue of fact for trial.  That Plaintiff elected to cut off its

business relationship with the Corporate Defendants because of past debts does not entitle it to collect the contract price for undelivered goods.   Plaintiff has made no showing to prove otherwise.

## CONCLUSION

For all the foregoing reasons, and as set forth above, Defendants respectfully request that the Court deny Plaintiff's motion for partial summary judgment.

Dated: New York, New York                    Respectfully Submitted,
       April 21, 2014
                                             HERRICK, FEINSTEIN  LLP


                            By:    /s/ James B. Gluckman
                                   Robert L. Rattet
                                   Ross L. Hirsch
                                   James B. Glucksman
                                   2 Park Avenue
                                   New York, New York 10016
                                   Telephone:  (212) 592-1400



                                   VENERUSO, CURTO, SCHWARTZ, &
                                   CURTO, LLP
                                   Joseph R. Curto, Esq.
                                   35 East Grassy Sprain Road
                                   Yonkers, New York 101710
                                   (914) 779-1100

                                   *Counsel for Defendants*

11